IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

Tri-State Generation and Transmission Association, Inc.,

       Plaintiff,

v.

Northwest Rural Public Power District,

       Defendant.

## COMPLAINT

1. Plaintiff Tri-State Generation and Transmission Association, Inc. brings this action against Defendant Northwest Rural Public Power District (NRPPD) for failing to pay for power it received from Tri-State and resold to NRPPD customers in breach of the Wholesale Electric Service Contract (WESC) between Tri-State and NRPPD.

2. Tri-State is a not-for-profit cooperative wholesale power supplier that provides power to each of its members under individual WESCs.

3. NRPPD is a rural public power district that supplies power to customers in the northwest corner of the Nebraska panhandle. NRPPD has purchased electric power from Tri-State for the past 72 years, starting in 1952.

## PARTIES

4.     Tri-State is a Colorado corporation organized under C.R.S. §§ 7-55-101 *et seq.* with a principal place of business in Westminster, Colorado. Tri-State is a Colorado citizen for diversity jurisdiction purposes.

5.     NRPPD is a non-profit political subdivision of the State of Nebraska with a principal place of business in Hay Springs, Nebraska. NRPPD is a Nebraska citizen for diversity jurisdiction purposes.

## JURISDICTION AND VENUE

6.     Because Tri-State and NRPPD are citizens of different states, and the matter in controversy exceeds $75,000.00 exclusive of interest and costs, this Court has subject matter jurisdiction under 28 U.S.C. §1332.

7.     Venue is proper under 28 U.S.C. § 1391, as a substantial part of the events and omissions giving rise to the claims in this Complaint occurred in this judicial district.

### NRPPD REFUSES TO PAY TRI-STATE FOR POWER IT IS ACCEPTING AND SELLING TO ITS MEMBERS

8.     Tri-State and NRPPD are parties to a WESC dated July 7, 2007. A copy of that contract is attached as **Exhibit A**.

9.     Under the WESC, at paragraph 1, "[t]he Seller [Tri-State] shall sell and deliver to the Member [NRPPD] and the Member shall purchase and receive from the Seller all electric service including capacity and energy which the Member shall require" except from certain sources not relevant here.

10. Under the WESC, at paragraph 3(a), NRPPD agreed to pay Tri-State "for all electric services furnished hereunder at the rates and on the terms and conditions set forth in the rates schedule."

11. Under the WESC, at paragraph 4, NRPPD agreed to pay Tri-State at its office in Colorado for its electric service "no later than the last day of the calendar month in which the bill is mailed to the Member provided however, if the date of presentation of the bill falls after the 20th day of the month, the Member shall receive one day of delay in payment for each day of delay in presentation."

12. Further, under the WESC, at paragraph 4, NRPPD agreed that if it fails to pay its bill within the time allowed a 1% late charge shall be added. Additionally, it agreed that amounts in arrears "will bear interest at the National Rural Utilities Cooperative Finance Corporation's Line of Credit rate, plus one percent (1%), applied to late payments on a daily basis in consideration of a 365-day year."

13. During May 2024, Tri-State performed as required under the WESC and NRPPD received power at the delivery points set forth under the WESC.

14. To fulfill its WESC obligations, Tri-State contracts with Basin Electric Power Cooperative to supply power to NRPPD and other Tri-State members in Nebraska.

15. NRPPD resold the power it received from Tri-State to its customers.

16. On June 12, 2024, consistent with the terms of the WESC, Tri-State sent NRPPD an invoice in the amount of $413,611.35 for the power NRPPD it received in May.

17. In breach of the WESC, NRPPD did not pay the invoice for the power delivered in May as required by the last day of June.

18. On June 28, instead of paying the invoiced amount as required under the WESC, NRPPD filed a frivolous interpleader action in Nebraska state court. A copy of NRPPD's interpleader complaint is attached as **Exhibit B.** In that action, NRPPD admitted it owed the amount Tri-State invoiced it for power in May, but falsely alleged there was a dispute between Tri-State and Basin over which company NRPPD should pay.

19. NRPPD had no good faith basis to allege Basin claimed to be owed the amount NRPPD tendered. Indeed, as NRPPD admits in its Complaint, Basin refused NRPPD's efforts to provide it billing information independent of Tri-State.

20. Basin has since stipulated in the interpleader matter that it does not have any claim to the tendered amount. A copy of the stipulation is attached as **Exhibit C.**

21. NRPPD filed the interpleader action in bad faith to avoid paying Tri-State as required under the WESC. Tri-State suffered damages in the form of legal fees and costs in responding to the interpleader case as a direct result of NRPPD's breach.

22. During June 2024, Tri-State performed as required under the WESC and NRPPD received power at the delivery points set forth under the WESC. NRPPD says in the Nebraska complaint that it does not intend to timely pay its invoice for June or subsequent months.

23. On July 12, 2024, consistent with the terms of the WESC, Tri-State sent NRPPD an invoice in the amount of $741,629.83 for the power NRPPD took in June.

24. NRPPD has disavowed its responsibility to pay for the amounts invoiced in July. In its Complaint, NRPPD says it intends to "tender" to the Court subsequent amounts billed by Tri-State.

25. The National Rural Utilities Cooperative Finance Corporation's Line of Credit rate is currently 7.250%, so the contractual interest amount is 8.250%.

26. Because it failed to pay within the time allowed, NRPPD owes, in addition to the invoiced amount of $413,611.35, a late fee in the amount of $4,136.11, and interest on the total accruing daily at an annual rate of 8.250%.

## CLAIMS FOR RELIEF
### FIRST CLAIM
### BREACH OF CONTRACT

27. Tri-State reincorporates the foregoing allegations.

28. The WESC constitutes an enforceable contract.

29. Tri-State complied with and substantially performed its obligations under the WESC in May 2024.

30. NRPPD breached the WESC by failing to timely pay for power it received in May 2024.

31. NRPPD's breach has caused Tri-State to suffer damages in an amount to be proven at trial, including the invoiced amount, the late fee, contractual interest, and Tri-State's attorneys' fees relating to the frivolous Nebraska interpleader action, which exceed $75,000.

## SECOND CLAIM
## ANTICIPATORY BREACH OF CONTRACT

32. Tri-State reincorporates the foregoing allegations.

33. The WESC constitutes an enforceable contract.

34. Tri-State complied with and substantially performed its obligations under the WESC in June 2024. It intends to continue to perform in future months.

35. NRPPD has stated it intends to breach the WESC by failing to timely pay Tri-State for power it received in June and which it will receive each month thereafter.

36. NRPPD's breach will cause Tri-State to suffer damages in an amount to be proven at trial, including the invoiced amount, the late fee, contractual interest, and any attorneys' fees relating to frivolous interpleader actions, which exceed $75,000.

## THIRD CLAIM IN THE ALTERNATIVE
## QUANTUM MERUIT

37. In the alternative, in May and after, NRPPD knew that Tri-State would continue to supply it power because it knew it had not successfully arranged for the supply to be paid for and provided by any other supplier. NRPPD could not have a break in service because that would have left its customers with no electric service.

38. NRPPD requested, by words or conduct, that it continue to receive the power Tri-State has arranged to have delivered to NRPPD so NRPPD could resell that power to its customers for its benefit.

39. Tri-State caused the power to be delivered as requested.

40. NRPPD has not paid Tri-State the reasonable value of the power, which exceeds $75,000.

### FOURTH CLAIM IN THE ALTERNATIVE
### UNJUST ENRICHMENT/RESTITUTION

41. In the alternative, in May and after, NRPPD knew that Tri-State would continue to supply it power because it knew it had not successfully arranged for the supply to be paid for and provided by any other supplier. NRPPD could not have a break in service because that would have left its customers with no electric service.

42. Tri-State conferred a benefit on NRPPD through the delivery of power.

43. NRPPD accepted, received, and used the power.

44. Under the circumstances, it would be inequitable for NRPPD to retain the benefit of the power without payment of its value, which exceeds $75,000.

### PRAYER FOR RELIEF

WHEREFORE, Tri-State prays this Court grant it relief, as follows:

a. A judgment that NRPPD has breached its contract with Tri-State.

b. Alternatively, judgments that Tri-State should recover under Quantum Meruit, and/or Unjust Enrichment/Restitution.

c. Actual and compensatory damages as are shown to have been proximately and directly caused by NRPPD in an amount to be proven at trial, plus all applicable late fees and prejudgment interest at the contractual rate;

d. Reasonable costs and expenses including reasonable attorneys' fees incurred by Tri-State in this action, in accordance with applicable law;

- 8 -

   e.  Prejudgment, moratory, and post-judgment interest on any monetary award according to the maximum allowable legal rate; and

   f.  Such other relief as this Court deems just and proper.

Respectfully Submitted July 22, 2024.

                */s/ Kenneth F. Rossman, IV*
                **Kenneth F. Rossman, IV**

                Kenneth F. Rossman, IV
                Frederick J. Baumann

                Lewis Roca Rothgerber Christie LLP
                1601 19th Street, Suite 1000
                Denver, CO  80202
                303.623.9000
                krossman@lewisroca.com
                fbaumann@lewisroca.com